UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MICHELLE ANDERSON,** | **2:21-CV-10535** |
| Plaintiff, | |
| vs. | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| **CROTHALL HEALTHCARE INC.**, a foreign corporation, | |
| Defendant. | |

Plaintiff brings this lawsuit against her former employer alleging unpaid overtime wages and wrongful discharge in violation of the Fair Labor and Standards Act (FLSA), 29 U.S.C. § 201 et seq. Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA") and dismiss the case, or alternatively stay proceedings. ECF No. 9. For the following reasons, Defendant's motion is **GRANTED.**

## I.    INTRODUCTION

Plaintiff Michelle Anderson worked in housekeeping services for Defendant Crothall Healthcare Inc. as a housekeeping supervisor from September 14, 2020, through December 14, 2020. Plaintiff alleges she was wrongfully discharged after complaining to Human Resources regarding not being paid wages for overtime. She filed the present lawsuit against Defendant and Defendant has moved to compel

arbitration of the matter. The following facts relate to Defendant's motion to dismiss the case.

On September 1, 2020, Plaintiff, received an email from "Compass Group Talent Acquisition" confirming her offer of employment with Defendant as a fulltime housekeeping supervisor.  The email instructed her to report to Adesoji Adeyinka, Crothall's Unit Director of Environmental Services. Anderson Aff., ECF No. 11-2, PageID.98.

 Plaintiff alleges that on September 14, 2020, she and Adeyinka met at DMC Sinai-Hospital where she affixed her signature—in ink—to a document titled "Job Summary." *See* ECF No. 11-2, PageID.95; Job Summary, *id*. at PageID.100. The following week, Plaintiff alleges she again met with Adeyinka at DMC Sinai-Hospital where Adeyinka instructed Plaintiff to digitally sign additional documents on his personal laptop computer with her initials "MA." ECF No. 11, PageID.85; ECF No. 11-2, PageID.95.

According to Defendant, it was on or about September 15, 2020, when Plaintiff electronically signed the remaining documents, including a Mutual Arbitration Agreement ("MAA"), the document at issue in the pending lawsuit. Adeyinka testifies that Plaintiff was given access to an online module using a platform called PeopleHub to review and sign all onboarding documents. Adeyinka Aff., ECF No. 12-1, PageID.113; PeopleHub, *id*. at PageID.116.  To access the onboarding documents, Plaintiff had to create a profile using her name, email address, and a

2

unique password of her choosing. Upon obtaining access, she was presented with several documents to review and sign, including the MAA. *Id.* Following the completion of the module on September 15, 2020, Plaintiff received a confirmation email listing the signed documents and completion of the onboarding process. *Id.* at PageID.114; Email, *id.* at PageID.118. The email address, zire33@gmail.com, is the email Plaintiff used to create her profile. *Id.*

Sandra Schuster, Crothall's Human Resources Director, also testifies that Plaintiff executed an MAA via electronic signature and that Plaintiff never executed her right to opt of out the contract. Schuster Aff., ECF No. 9-3, PageID.48.

Plaintiff denies ever reviewing or signing the MAA and challenges Defendant's right to compel arbitration.

## II.   LEGAL STANDARD

Under the FAA, the Court must enforce valid arbitration agreements. See 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion . . . but instead mandates that [the Court] shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3–4). A defendant may invoke arbitration by (1) requesting a stay of the proceedings under § 3 while "any issue referable to arbitration under [the] agreement" is arbitrated, or (2) moving under § 4 for an "order

3

directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." *Boykin v. Fam. Dollar Stores of Mic*h., *LLC*, 3 F.4th 832, 836–37 (6th Cir. 2021).

"There is a 'liberal federal policy favoring arbitration agreements,' which is, 'at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 454 (6th Cir. 2021) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)). But the "presumption" favoring arbitration, as it is sometimes called, applies only to the scope of an arbitration agreement, not to its existence. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 302–03 (2010). "[N]o matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)).

The Court reviews an arbitration agreement's validity under the applicable state law of contract formation. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011). To determine whether the agreement is "in issue," the Court considers evidence outside the pleadings as it would when adjudicating a summary judgment motion under Civil Rule 56. *Boykin*, 3 F.4th at 838. The court views all facts and

inferences in the light most favorable to the nonmoving party. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Defendant, as "the movant asserting the existence of a contract, must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *In re StockX Customer Data Sec. Breach Litig., 19 F.4th 873, 880–81 (6th Cir. 2021) (*citing *Hergenreder*, 656 F.3d at 417; Fed. R. Civ. P. 56(a), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Once the movant makes a prima facie showing of the agreement's existence, the party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc.*, 288 F.3d at 889.

## III.   DISCUSSION

Section 2 of the FAA provides that written arbitration agreements involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Upon concluding that the plaintiff's claims are subject to arbitration, a district court may dismiss the action or, if requested by a party, stay the action. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518-19 (6th Cir. 2017); *Ozormoor v. T-Mobile USA, Inc.,* 354 F. App'x 972, 975 (6th Cir. 2009) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir. 1990)).

Courts look to general principles of state contract law to determine whether a valid arbitration agreement exists. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Here, the parties each cite Michigan law in their briefs. Michigan law requires an offer and acceptance to form a contract. Under Michigan law, the essential elements of a valid contract are the following: "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja,* 187 Mich. App. 418, 422 (1991). Before a contractual relationship is established, there must also be an offer and an unambiguous acceptance in strict conformance with that offer. *Kloian v. Dominos Pizza LLC*, 273 Mich. App. 449, 452 (2006).

What constitutes an offer or acceptance under Michigan law was summarized by the Sixth Circuit in *Hegenreder v. Bickford Senior Living Grp., LLC* :

> "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian v. Domino's Pizza LLC*, 273 Mich. App. 449, 733 N.W.2d 766, 770 (2006) (internal quotations marks omitted). Similarly, "an acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that

purpose." *Id.* at 771 (quotation marks omitted; alteration removed). 656 F.3d 411, 417 (6th Cir. 2011).

The Court must first determine whether the parties agreed to arbitrate. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). "Whether the parties have mutually agreed to be bound [by contract] 'is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Id.* (quoting *Kloian*, 733 N.W.2d at 771).

In the present matter, Defendant has produced an MAA exhibiting Plaintiff's electronic signature. ECF No. 9-2. According to Defendant, in order to sign the document, Plaintiff had to create a unique username and password, which means no one else theoretically would have access to her profile to sign the documents on her behalf.

However, Plaintiff alleges that the MAA is "in issue" here and that the elements of a valid contract cannot be found because Plaintiff did not sign the contract and the evidence does not support finding that she did so. To support her defense, Plaintiff cites to *Hergenreder* where the Sixth Circuit affirmed the district court's finding that there was no agreement between Macy's and its former employee to arbitrate disputes arising from her employment.

7

However, *Hergenreder* is distinguishable from the case before the court. In that case, the employer required that the new employee sign an acknowledgment stating that she received the employee handbook. 656 F.3d at 414. The handbook contained no reference to an arbitration agreement, but it did refer the employee to another document, the Dispute Resolution Procedure, which contained an arbitration agreement. *Id.* at 417-18. The employer did not contend that the employee signed the arbitration agreement that was attached to the dispute resolution procedure, but rather that she assented to its terms by continuing to work. *Id.* at 419. The court held that the employee was not contractually obligated to read the arbitration agreement that was referenced in the handbook. *Id.* at 418. Further, the reference to the arbitration agreement in the handbook was not an offer because that reference was not a manifestation of willingness to enter a bargain. *Id.* at 418. Therefore, the employer never made an offer related to the arbitration agreement and the employee could not have assented to it.

Here, Defendant does contend that Plaintiff signed the arbitration agreement. Moreover, Defendant has produced a document bearing what appears to be Plaintiff's electronic signature dated September 15, 2020. ECF No. 9-2. On this same date, the record also shows that in addition to the MAA, Defendant provided Plaintiff with several other documents to review and sign on an online platform as part of her onboarding process. And Plaintiff received a confirmation email containing

8

attachments consisting of all the onboarding documentation, including the MAA, that she completed and/or signed on the PeopleHub platform on Tuesday, September 15, 2020, at 2:28 PM.

Although Plaintiff points to the fact that neither her Job Summary (ECF No. 11-3) nor Employee File Verification form (ECF No. 11-4) list the MAA, and that such an omission is evidence that she never received notice of the arbitration agreement, this is unpersuasive. The Job Summary simply details plaintiff's role and responsibilities. The Employee File Verification form serves as a record for verifying Plaintiff's employment at Crothall. It is not unusual that an arbitration agreement would not be included in a summary of job duties or a form containing information pertaining to the employee's ability to pass a background check.

The key question, however, is whether Plaintiff's testimony that she is "certain" she did not sign the agreement to arbitrate is sufficient by itself to raise a genuine issue of material fact. The Court concludes such testimony is not sufficient in light of the record as a whole. "A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form." MCL § 450.837. While Plaintiff claims she did not electronically sign the arbitration agreement, she clearly knew that she signed the other employment documents provided on the platform and treated her electronic signature as binding, evinced by her

beginning to work for Defendant upon completion of the onboarding process. The only "handwritten" signature appears on the Job Summary.

Finally, Defendant has sufficiently shown the efficacy of the security procedure applied to determine that the electronic signature on the Agreement is attributable to Plaintiff. Defendant attaches the Declaration of Adeyinka. ECF No. 12-1. Adeyinka has personal knowledge of Defendant's employment application and on-boarding system and procedures. Adeyinka claims that Defendant uses an onboarding system that required Plaintiff to create a profile using her name, e-mail address, and a unique password of her choosing. ECF No. 12-1, PageID.113. Plaintiff does not contest that she used this unique password to affirm agreement to electronically access, receive, review, sign, and authenticate documents related to her employment. On September 15, 2020, Plaintiff acknowledged and electronically signed the Agreement, which involved completion of multiple steps. To sign each document with an electronic signature, Plaintiff first had to log into the on-boarding system with her unique password and email.

Plaintiff does not allege that her profile information or unique password is available to anyone else. Nor does she allege she was presented with the MAA and did not understand or comprehend the terms of the agreement.

Plaintiff states that she did not know about the arbitration agreement, but the record indicates she received a confirmation email

10

listing all of the documents she signed during her onboarding process, including the MAA. And Plaintiff does not challenge that zire33@gmail.com is the personal email address she used to create her PeopleHub profile account.

Other courts have rejected a party's own assertion, without evidentiary support, as sufficient to create a genuine issue of material fact in these circumstances when the evidence shows otherwise. "Plaintiff's reliance on . . . [her] conclusory and self-serving affidavit is insufficient to create an issue of material fact." *Crews v. Maxim Healthcare Servs., Inc.*, No. 21-CV-01019-STA-JAY, 2021 WL 2417732 (W.D. Tenn. June 14, 2021) (finding electronic signature on arbitration agreement sufficient to support summary judgment); *see Solomon v. CARite Corp. LLC*, 837 F. App'x 355, 362–63 (6th Cir. 2020) citing *Accord Stephens v. Frisch's Big Boy Rests.*, No. 1:19-CV-954, 2020 WL 4754682, at *3 (S.D. Ohio July 30, 2020) ("Plaintiff's naked assertion that she did not sign the arbitration agreement, without more, is insufficient to raise a dispute of material fact regarding the validity of the arbitration agreement or whether she electronically acknowledged the arbitration agreement."); *Franklin*, 2017 WL 7691757, at *4 ("[The plaintiff's] testimony that she did not recall reviewing or agreeing to the Arbitration Agreement is not sufficient to refute the [defendant's] [online] system record that she had done so."); *see also Morgan v. United Healthcare Servs., Inc.*, No. 1:12-cv-676–HJW, 2013 WL 1828940, at *3 (S.D. Ohio

11

Apr. 30, 2013) ("In her affidavit, plaintiff . . . indicates she does not 'believe' she submitted an "electronic signature" that agreed to arbitration.' Such conjecture is belied by the record and provides no basis to avoid arbitration. . . . To the extent plaintiff suggests she does not remember, this fails to create any issue as to whether the parties had a valid agreement to arbitrate.").

Evaluating the totality of the circumstances, Defendant has demonstrated, through documents, electronically stored information, and affidavits, that there is no genuine dispute as to any material fact regarding the existence of an agreement to arbitrate in this case.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that a valid arbitration agreement exists between Plaintiff and Defendant. Accordingly, Defendant's motion to compel arbitration is **GRANTED**. Plaintiff is required to submit her claims against Defendant to arbitration and her claims before this Court are hereby **DISMISSED**.

**IT IS SO ORDERED.**

Dated: August 29, 2022      s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE